IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ENERGY CREATES ENERGY, LLC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:18-cv-00913-DGK |
| BRINKS GILSON LIONE, P.C., et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL

This case, which the Court hears sitting in diversity, arises out of Plaintiffs Genesys' and its subsidiary, Energy Creates Energy, LLC's ("ECE"), allegations that Defendants Brinks Gilson Lione, P.C. ("Brinks"), a law firm, and Michael Gzybowski, a former attorney at Brinks, breached their fiduciary duties, committed legal malpractice and civil conspiracy, and aided and abetted the misappropriation of trade secrets and the tortious interference with business relationships. The core of Plaintiffs' claims assert that Defendants assisted their clients—non-parties Heritage Recycling, LLC and related Heritage entities (collectively "Heritage")—in stealing Plaintiffs' intellectual property rights and capitalizing on the misappropriated technology.

Now before the Court is Plaintiffs' motion to compel (Doc. 49), seeking an order that Defendants answer Plaintiffs' Interrogatories and produce responsive documents to Plaintiffs' Requests for Production, which Defendants have withheld on the basis of the attorney-client privilege.[1] For the following reasons, the motion is GRANTED IN PART.

---

[1] Defendants previously asserted that some disclosures were barred by the attorney work-product doctrine and collateral estoppel (Doc. 27). Plaintiffs do not dispute that the materials Defendants have objected to producing based on the work-product doctrine—materials between outside and inside counsel concerning *this lawsuit*—are protected from disclosure (Doc. 50). Moreover, Defendants' argument that some disclosures are barred by collateral estoppel was mooted by Judge Sachs' order denying Defendants' Motion for Partial Summary Judgment without prejudice to

**Background**

The complete history of this lengthy dispute is laid out in prior orders. For purposes of resolving this motion, the relevant facts are as follows.

In 2009, Kyle Watts hired Genesys to help him commercialize a machine he and his uncle invented that shreds construction materials (the "Watts Shredder"). Genesys then formed ECE to control the intellectual property relating to the Watts Shredder. ECE was assigned all rights in the Watts Shredder. In May 2011, ECE entered into an agreement with Heritage—an entity that manages waste-management and recycling companies—which licensed to Heritage the Watts Shredder's intellectual property for twenty-five years and allowed Heritage to sell two prototype shredders related to that technology in exchange for three million dollars and ongoing royalty payments ("the Agreement").

A few months after the Agreement, Heritage recommended that ECE seek legal advice from its attorney, Gzybowski, a patent attorney at Brinks, regarding the intellectual property rights related to the Watts Shredder. ECE obliged, and Gzybowski began to act as the patent prosecution attorney for ECE and Kyle Watts. Gzybowski continued to represent Heritage without informing ECE of a conflict in his dual representation or seeking a waiver of any potential conflicts.

Shortly after Plaintiffs and Heritage entered into the Agreement, Heritage developed a competing shredder (the "Sebright Shredder"), which Plaintiffs claim was invented using ECE's trade secrets and confidential information that Gzybowski obtained as counsel for ECE and Kyle Watts. Heritage then sought to terminate the Agreement with ECE.

In Spring 2014, after the fallout between Plaintiffs and Heritage, Gzybowski informed ECE

permit a deposition of Michael Gzybowski (Doc. 55). Accordingly, the Court does not address those issues in this order, focusing only on Defendants' assertion of the attorney-client privilege.

that it would no longer represent it or Kyle Watts, and he sent ECE's file to ECE's new intellectual property attorney. Plaintiffs claim the sent file was incomplete and heavily redacted.

Plaintiffs filed this lawsuit in October 2018. They allege Defendants breached their fiduciary duties and engaged in legal malpractice. Their claims center around Plaintiffs' allegations that "Defendants acted simultaneously as the attorneys to ECE and Heritage, and that Defendants abused their relationship with ECE by taking actions that favored Heritage's interests over ECE's to Plaintiffs' detriment" (Doc. 50 at 6).

On March 29, 2019, Plaintiff served their First Set of Discovery Requests on Defendants in which Plaintiffs sought to, *inter alia*, uncover additional evidence that Defendants were acting simultaneously as the attorneys for ECE and Heritage and that Defendants took actions in that conflicted role against ECE's interests. Defendants objected to twenty-eight requests for documents and eighteen interrogatories, claiming that the information was protected from disclosure by the attorney-client privilege. Defendants submitted a privilege log ("the Log") identifying thirty-six[2] emails, documents, or files that they have withheld on that basis (Doc. 60-5). The Log identifies the document name, the date and time the document was sent, from and to whom the document was sent, anyone who was carbon copied the document, and a brief description of the document. *Id*. Most of the documents relate to the parties' Agreement and the work arising thereunder. *Id*. For example, multiple entries include in their description: "Communication re: intellectual property rights Heritage obtained as part of the Purchase License & Commercialization Agreement," while others refer more generally to "Communication re: shredder Plaintiffs provided to Heritage." *Id*.

Plaintiffs now seek a motion from this Court compelling Defendants to provide the

---

[2] The document actually contains thirty-seven documents, but one was not withheld on the basis of privilege, and, therefore, is not relevant to this motion. *See* BGL-14457-13_000136 (Doc. 60-5).

3

thirty-six documents identified in the Log.

## Discussion

Plaintiffs argue that Defendants have failed to establish the attorney-client privilege applies to the requested documents, and, even if it does, the privilege is overcome by the joint-client exception. Defendants argue they have proven the attorney-client privilege applies. They also concede that a joint-client relationship existed for purposes of prosecuting patents for the Watts Shredder but argue the joint-client exception is inapplicable to the documents listed in the Log.

### I.     The documents are protected by the attorney-client privilege.

Rule 26 of the Federal Rules of Civil Procedure provides a party with the authority to obtain discovery of nonprivileged documents and materials that are relevant to its claims. To refuse disclosure based on privilege, the party withholding the information is required to expressly make the claim of privilege and describe the nature of the documents, communications, or things not produced without revealing the privileged information. Fed. R. Civ. P. 26(b)(5). In a diversity case, a claim that the attorney-client privilege applies is governed by state law. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).

Under Missouri law, communications between attorneys and clients are generally protected from third parties when they are made for the purposes of obtaining or providing legal advice. Mo. Rev. Stat. § 491.060(3). "The elements of attorney-client privilege are: (1) the existence of an attorney-client relationship at the time the communication was made or advice was given; and (2) the attorney-client relationship existed with respect to the subject matter of the communication or advice." *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 116 (Mo. Ct. App. 2012). "The party asserting attorney-client privilege bears the burden of proof to demonstrate that the privilege applies." *Id*.

4

After reviewing the Log provided by Defendants, the Court finds that the identified documents are protected by the attorney-client privilege. It is undisputed that the first element is satisfied; an attorney-client relationship between Defendants and Heritage existed at the time the communications identified in the Log were made. As for the second element, while Defendants arguably could have provided a more detailed explanation of each document's contents, the explanation provided is sufficient for this Court to conclude that the attorney-client relationship existed with respect to the subject matter of the communication or advice. The Log identifies communications between Heritage and Defendants that either seek or offer legal advice regarding the Watts Shredder or other legal matters. Accordingly, Defendants have met their burden of proving the documents identified by the Log fall within the attorney-client privilege.

**II.     The Court will conduct an *in camera* review of the documents identified in the Log to determine whether the joint-client exception applies.**

Plaintiffs argue that an exception to the attorney-client privilege—known as the joint-client exception—exists in this case, making the documents in the Log discoverable. The joint-client exception applies when an attorney represents two clients in a matter of common interest, including the prosecution of a patent. *In re Tri-River Trading*, LLC, 329 B.R. 252, 268 (B.A.P. 8th Cir. 2005) (finding that in a joint-client relationship, there is "no expectation of confidentiality among joint clients") *aff'd sub nom. DeBold v. Case*, 452 F.3d 756 (8th Cir. 2006). For purposes of this motion, it is undisputed Defendants acted as attorneys for both Heritage and ECE for purposes of prosecuting the Watts Shredder, and, thus, a joint-client relationship existed.

When a joint-client relationship exists, the Eighth Circuit has held that "there is no attorney-client privilege for communications received by such joint clients when the clients are in dispute with each other." *Id*. While neither the Eighth Circuit nor Missouri courts have addressed the exact situation here—where one client sues the former joint attorney rather than the joint

5

client—persuasive authority from other cases addressing this factual scenario have "uniformly" reached the same conclusion: "A joint client suing only the joint attorney may compel disclosure of privileged documents from the joint representation." *Newsome v. Lawson*, 286 F. Supp. 3d 657, 662 (D. Del. 2017) (citing *Anten v. Super. Ct.*, 233 Cal. App. 4th 1254 (2015)); *Bolton v. Weil, Gotshal & Manges LLP*, 14 Misc. 3d 1220(A), 2005 WL 5118189, at *5–7 (N.Y. Sup. 2005); *Farnsworth v. Van Cott, Bagley, Cornwall & McCarthy*, 141 F.R.D. 310, 313 (D. Colo. 1992); *Constr. Unlimited Corp. v. Woodfield*, No. CV-91-0503795, 1992 WL 157511, at *2 (Conn. Super. June 17, 1992); *Tunick v. Day, Berry & Howard*, 486 A.2d 1147, 1149 (Conn. 1984)). This is because the "[r]ules governing the [joint-client] privilege are premised on an assumption that [joint clients] usually understand that all information is to be disclosed to all of them. . . . Fairness and candor between the [joint clients] and the lawyer generally precludes the lawyer from keeping information secret from any one of them . . . ." Restatement (Third) of the Law Governing Lawyers, § 75 cmt. d (Am. Law Inst. 2000). Accordingly, a joint attorney may not withhold from a joint client privileged communications from the joint representation even if the nonsuing party refuses to consent to the disclosure.

Plaintiffs argue that the documents identified in the Log are subject to the joint-client exception because they are within the scope of the joint representation. Defendants respond that although the Log makes "passing mention of Plaintiffs, the Watts Patent, or the Watts' shredding technology (and that is why they were included on the privilege log), those privileged communications have nothing to do with the only matter involved in the alleged joint representation," *i.e.*, prosecution of the Watts Shredder (Doc. 60 at 3). Thus, Defendants contend that even if they were scheming with Heritage to undermine Plaintiffs' patent, such matters fall outside the joint-client exception because they are adverse to, rather than in collaboration with,

Plaintiffs. Plaintiffs reply that Defendants are construing the joint-client exception too narrowly; "the question is not whether Heritage and Defendants were acting adversely to Plaintiffs, but whether the communications at issue relate to work arising under the Agreement" (Doc. 72 and 8).

At this juncture, however, this Court need not—and cannot—determine whether the documents are within the scope of the joint representation and, therefore, discoverable. Indeed, the Supreme Court and Eighth Circuit have both held that only after conducting an *in camera* review may a district court allow the disclosure of allegedly privileged documents. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) (clarifying the procedure district courts should adopt in deciding a motion to compel production of privileged documents)[3]; *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641–42 (8th Cir. 2001) (finding district court abused its discretion in ordering disclosure without an *in camera* review) (quoting *Zolin*, 491 U.S. at 572). Thus, on this record, the Court is limited to determining whether the documents contained in the Log should be reviewed by the Court *in camera*. *See Zolin*, 491 U.S. at 563.

To be entitled to an *in camera* review of allegedly privilege documents, Plaintiffs must first make a "threshold showing of a factual basis adequate to support a good faith belief by a reasonable person" that the attorney-client privilege does not apply. *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d at 641–42. This is not a stringent standard and requires less of an evidentiary showing than is required to ultimately overcome the privilege. *Zolin*, 491 U.S. at 572. If the threshold is not met, the Court upholds the privilege and need not review the documents *in camera*. *Id*. If the threshold is met, there must be an additional showing that "the facts and circumstances of a particular case," including "the volume of materials in question, their relative importance to the case, [and] the likelihood [the exception] will be found to apply" warrant *in camera* review. *In*

---

[3] Although the Court was analyzing the issue under the crime-fraud exception, this Court finds it applicable in deciding a motion to compel production of privileged documents under the joint-client exception, as well.

7

*re BankAmerica Corp. Sec. Litig.*, 270 F.3d at 642.

The Court finds Plaintiffs have made a threshold showing in this case. As an initial matter, all communications on the Log occurred during Defendants' joint representation of ECE and Heritage. Moreover, nearly all communications being withheld appear to directly relate to the Agreement between Heritage and ECE and the work arising thereunder (Doc. 60-5). Those entries that do not directly relate to the Agreement refer generally to legal advice regarding patent infringement during the same July 2012 period that Plaintiffs have alleged Defendants committed legal malpractice by assisting Heritage with development of the competing shredder. *See id*. (BGLCTRL0068814 ("Request for general legal advice regarding patent infringement"), BGLCTRL0068816 ("General legal advice regarding patent infringement"), BGLCTRL0068828 ("Request for call re: general legal advice on patent infringement"), BGLCTRL0068830 ("Response to request made in BGLCTRL0068816")). Thus, a reasonable person would have an adequate factual basis to infer that these documents, like the others identified in the Log, fall within the exception.

The facts and circumstances of this case also warrant *in camera* review. The Log lists only thirty-six materials, so the number of documents is limited. Moreover, Plaintiffs claim that Defendants engaged in serious misconduct by assisting Heritage in developing a competing shredder. Were these documents to contain information supporting that contention, such evidence would not only be relevant, but likely dispositive, of Plaintiffs' claims. Finally, this Court finds that if, as Plaintiffs claim, Defendants were assisting Heritage in finding a way around Plaintiffs' patent, the exception is likely to apply. Indeed, the scope of the representation was not limited solely to those communications which were beneficial to Plaintiffs but rather included any communications between Heritage and Defendants that relate to the subject matter of the

8

Agreement, including any communications that touch on the scope and nature of ECE's intellectual property rights. *See Bolton*, 2005 WL 5118189, at *6 (finding that to the extent the joint clients "are alleged to have had conflicting interests . . . , any such purported conflict does not render their individual communications with their joint attorneys confidential"). "The rules of discovery therefore do not insulate from discovery the communications of a duplicitous party who feigns common interest while scheming otherwise with a shared, trusted advisor." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 226 (1st Cir. 2005).

Accordingly, the Court exercises its discretion to conduct an *in camera* review of the thirty-six materials in the Log.[4] Defendants shall submit the documents to the Court by July 1, 2020.

### III. Defendants are not entitled to present evidence and argument at this time.

Perhaps recognizing that this Court would conduct an *in camera* review, Defendants request that it allow them to present, *ex parte*, evidence and argument on a document-by-document basis to support their position that the joint-client exception does not apply. The Court finds a hearing on this issue unnecessary at this time.

Once a district court has determined that an *in camera* review is proper and has received the documents for review, "[it] need not conduct a formal hearing or receive additional evidence and argument if it determines that the . . . exception does not apply." *In re Gen. Motors Corp.*, 153 F.3d 714, 716 (8th Cir. 1998). "[T]he district court may not, however, compel production without permitting the party asserting the privilege, to present evidence and argument." *Id.* The

---

[4] Plaintiffs' also argue that Defendants have alluded to documents not mentioned in the Log, and, thus, they request this Court require Defendants to update their Log to list all documents being withheld. Defendants represented to this Court that "[t]here are no documents to compel otherwise covered by Plaintiffs' claimed joint representation privilege exception" (Doc. 60 at 2). Accordingly, this Court has no reason to believe Defendants are withholding relevant documents. If it were later to be determined they were, their lack of candor to the Court and violation of their duties to provide all relevant documentation could—and likely would—result in sanctions. Fed. R. Civ. P. 11, 37.

9

party requesting disclosure does not have "a lawful right to insist on being present or represented at the *in camera* review," even if the party asserting the privilege presents evidence and argument. *Id*. at 717. If the court does allow the party seeking disclosure to attend the hearing, the court must conduct the proceedings in such a manner that maintains the confidentiality of the materials. *Id*. If the exception is ultimately found to apply, the Court must "keep the privileged communications under seal to prevent their further disclosure until all avenues of appeal have been exhausted." *Id*.

With the above law in mind, the Court finds setting a hearing for Defendants to submit evidence and argument unnecessary. If the Court determines that certain documents may fall within the joint-client exception, it will allow Defendants to present evidence and argument. The Court defers ruling on whether Defendants may do so *ex parte*.

## Conclusion

For the foregoing reasons, Plaintiffs' motion to compel is GRANTED IN PART. Defendants shall submit to the Court *ex parte* the documents and files identified in the Log by July 1, 2020.

**IT IS SO ORDERED.**

Date:  June 10, 2020  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT